**SHIMBERG & FRIEL, P.C.**
**Attorneys-at-Law**
By: Nancy A. Nolan, Esquire
PA I.D. No. 38902
20 Brace Road, Suite 350
Cherry Hill, NJ 08034
Phone: (856) 857-0700
Attorneys for Defendant/Third Party Plaintiff,
ThyssenKrupp Elevator Corporation

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASMINE SUMAIR, | : | Case No.: 2:21-cv-00145 |
| Plaintiff, | : | CIVIL ACTION LAW |
| v. | : | |
| THYSSENKRUPP ELEVATOR CORPORATION d/b/a THYSSENKRUPP ELEVATORS; SCHINDLER ELEVATOR CORP.; WESTINGHOUSE ELECTRIC CO., LLC; WESTINGHOUSE ELECTRIC CORPORATION, | : | |
| Defendant. | : | |
| THYSSENKRUPP ELEVATOR CORPORATION, | : | Case No.: 2:21-cv-00145 |
| Defendant/Third Party Plaintiff, | : | CIVIL ACTION LAW |
| v. | : | |
| BELMONT BEHAVIORAL HOSPITAL, LLC, | : | |
| Third Party Defendant. | : | |

## ANSWER, SEPARATE DEFENSES AND THIRD PARTY COMPLAINT OF DEFENDANT, THYSSENKRUPP ELEVATOR CORPORATION, TO <u>PLAINTIFF'S SECOND AMENDED COMPLAINT</u>

Defendant, ThyssenKrupp Elevator Corporation, (hereinafter "Answering Defendant"), by and through its attorneys, Shimberg & Friel, P.C., hereby answers Plaintiff's Second Amended Complaint in corresponding numbered paragraphs as follows:

1.     Denied.   After reasonable investigation, Answering Defendant lacks information sufficient to form a belief as to the truth of these allegations and they are accordingly denied.

2.     Admitted.

3.     Denied.   These allegations are not directed to Answering Defendant and Answering Defendant is without information sufficient to form a belief as to the truth of these allegations.

4.     Denied.   These allegations are not directed to Answering Defendant and Answering Defendant is without information sufficient to form a belief as to the truth of these allegations.

5.     Denied.   These allegations are not directed to Answering Defendant and Answering Defendant is without information sufficient to form a belief as to the truth of these allegations.

6.     Denied.   These allegations are not directed to Answering Defendant and Answering Defendant is without information sufficient to form a belief as to the truth of these allegations.

7.     Denied.   These allegations are not directed to Answering Defendant and Answering Defendant is without information sufficient to form a belief as to the truth of these allegations.

8.      Admitted upon information and belief.

9.      Denied.   These allegations are not directed to Answering Defendant and Answering Defendant is without information sufficient to form a belief as to the truth of these allegations.

10.     Denied.   These allegations are not directed to Answering Defendant and Answering Defendant is without information sufficient to form a belief as to the truth of these allegations.

11.     Admitted in part. Denied in part.   It is admitted only that Answering Defendant had certain service and maintenance obligations relating to the elevator at issue pursuant to the terms of an agreement.   The remaining allegations are specifically denied.

12.     Admitted only that Answering Defendant regularly conducted business in the Philadelphia Pennsylvania at the relevant time.

13.     Denied.   These allegations are not directed to Answering Defendant and Answering Defendant is without information sufficient to form a belief as to the truth of these allegations.

14.     Denied.   These allegations are not directed to Answering Defendant and Answering Defendant is without information sufficient to form a belief as to the truth of these allegations.

15.     Denied.  These allegations are not directed to Answering Defendant and Answering Defendant is without information sufficient to form a belief as to the truth of these allegations.

16.     Denied.   After reasonable investigation, Answering Defendant is without information sufficient to form a belief as to the truth of these allegations.

17.     Denied.   After reasonable investigation, Answering Defendant is without information sufficient to form a belief as to the truth of these allegations.

18.     Denied.   After reasonable investigation, Answering Defendant is without information sufficient to form a belief as to the truth of these allegations.

19.     Denied.   After reasonable investigation, Answering Defendant is without information sufficient to form a belief as to the truth of these allegations.

20.     Admitted in part. Denied in part. It is admitted only that Answering Defendant had certain service and maintenance obligations relating to the elevator at issue pursuant to the terms of an agreement between Answering Defendant and Belmont Behavioral Hospital.  The remaining allegations are denied.

21.     Denied. These allegations are not directed to Answering Defendant and Answering Defendant is without information sufficient to form a belief as to the truth of these allegations.

22.     Denied.   After reasonable investigation, Answering Defendant lacks information sufficient to form a belief as to the truth of these allegations and they are accordingly denied.

23.     Denied.   After reasonable investigation, Answering Defendant lacks information sufficient to form a belief as to the truth of these allegations and they are accordingly denied.

24.     Denied.     After reasonable investigation, Answering Defendant lacks information sufficient to form a belief as to the truth of these allegations and they are accordingly denied.

25.     Denied.     After reasonable investigation, Answering Defendant lacks information sufficient to form a belief as to the truth of these allegations and they are accordingly denied.

26.     Denied.     After reasonable investigation, Answering Defendant lacks information sufficient to form a belief as to the truth of these allegations and they are accordingly denied.

27.     Denied.     After reasonable investigation, Answering Defendant lacks information sufficient to form a belief as to the truth of these allegations and they are accordingly denied.

28.     Denied.     After reasonable investigation, Answering Defendant lacks information sufficient to form a belief as to the truth of these allegations and they are accordingly denied.

29.     Denied.  These allegations are conclusions of law to which no responsive pleading is required.    It is further denied that Answering Defendant manufactured, sold, delivered or installed the subject elevator.

30.     Denied.  These allegations are conclusions of law to which no responsive pleading is required.  To the extent a response is deemed necessary, the allegations are denied.

31.     Denied.  These allegations are conclusions of law to which no responsive pleading is required.  To the extent a response is deemed necessary, the allegations are denied.

## COUNT I – NEGLIGENCE
### Plaintiff v. Thyssenkrupp Defendants

32.     Answering Defendant incorporates by reference its responses to the preceding allegations of Plaintiff's Second Amended Complaint as though fully set forth in their entirety.

33.     Denied. These allegations are conclusions of law to which no responsive pleading is required.  To the extent a response is deemed necessary, the allegations are denied.   It is further denied that Answering Defendant designed, engineered manufactured, sold, delivered or installed the subject elevator.

34.     Denied. These allegations are conclusions of law to which no responsive pleading is required.  To the extent a response is deemed necessary, the allegations are denied.

35.     Denied. These allegations are conclusions of law to which no responsive pleading is required.  To the extent a response is deemed necessary, the allegations are denied.  The allegations of notice are specifically denied.

36.     Denied. These allegations are conclusions of law to which no responsive pleading is required.  To the extent a response is deemed necessary, the allegations are denied.

**WHEREFORE,** Answering Defendant demands judgment dismissing the Plaintiff's Second Amended Complaint, together with an award of counsel fees and

costs incurred by Answering Defendant, and for such other relief as this Court may deem equitable and just.

### COUNT II – STRICT LIABILITY
**Plaintiff v. Thyssenkrupp Defendants**

37.     Answering Defendant incorporates by reference it responses to the preceding allegations of Plaintiff's Second Amended Complaint as though fully set forth in their entirety.

38-44.     Denied. Answering Defendant did not design, manufacture or sell the subject elevator and Plaintiff's products liability allegations should be dismissed. Answering Defendant further denies the notice allegations. These allegations are further denied as conclusions of law to which no responsive pleading is required. To the extent a response is deemed necessary, the allegations are denied.

**WHEREFORE,** Answering Defendant demands judgment dismissing the Plaintiff's Second Amended Complaint, together with an award of counsel fees and costs incurred by Answering Defendant, and for such other relief as this Court may deem equitable and just.

### COUNT III – BREACH OF CONTRACT IMPLIED WARRANTIES
**Plaintiff v. Thyssenkrupp Defendants**

45.     Answering Defendant incorporates by reference its responses to the preceding allegations of Plaintiff's Second Amended Complaint as though fully set forth in their entirety.

46-48.     Denied. Answering Defendant did not design, manufacture or sell the subject elevator and Plaintiff's products liability allegations including breach of implied warranties must be dismissed.   These allegations are further denied as

conclusions of law to which no responsive pleading is required. To the extent a response is deemed necessary, the allegations are denied.

**WHEREFORE,** Answering Defendant demands judgment dismissing the Plaintiff's Second Amended Complaint, together with an award of counsel fees and costs incurred by Answering Defendant, and for such other relief as this Court may deem equitable and just.

## COUNT IV – NEGLIGENCE
### Plaintiff v. Schindler & Westinghouse

49.    Answering Defendant incorporates by reference its responses to the preceding allegations of Plaintiff's Second Amended Complaint as though fully set forth in their entirety.

50-53.    Denied.  These allegations are not directed to Answering Defendant and Answering Defendant is without information sufficient to form a belief as to the truth of these allegations.

**WHEREFORE,** Answering Defendant demands judgment dismissing the Plaintiff's Second Amended Complaint, together with an award of counsel fees and costs incurred by Answering Defendant, and for such other relief as this Court may deem equitable and just.

## COUNT V – STRICT LIABILITY
### Plaintiff v. Schindler & Westinghouse

54.    Answering Defendant incorporates by reference its responses to the preceding allegations of Plaintiff's Second Amended Complaint as though fully set forth in their entirety.

55-61.      Denied.  These allegations are not directed to Answering Defendant and Answering Defendant is without information sufficient to form a belief as to the truth of these allegations.

**WHEREFORE,** Answering Defendant demands judgment dismissing the Plaintiff's Second Amended Complaint, together with an award of counsel fees and costs incurred by Answering Defendant, and for such other relief as this Court may deem equitable and just.

## COUNT VI – BREACH OF WARRANTIES
### Plaintiff v. Schindler & Westinghouse

62.     Answering Defendant incorporates by reference its responses to the preceding allegations of Plaintiff's Second Amended Complaint as though fully set forth in their entirety.

63-65.      Denied.  These allegations are not directed to Answering Defendant and Answering Defendant is without information sufficient to form a belief as to the truth of these allegations.

**WHEREFORE,** Answering Defendant demands judgment dismissing the Plaintiff's Second Amended Complaint, together with an award of counsel fees and costs incurred by Answering Defendant, and for such other relief as this Court may deem equitable and just.

## COUNT VII – BREACH OF CONTRACT (THIRD PARTY BENEFICIARY)
### Plaintiff v. ThyssenKrupp, Belmont Behavioral Hospital, LLC and Belmont Physician Services, LLC

66.     Answering Defendant incorporates by reference its responses to the preceding allegations of Plaintiff's Second Amended Complaint as though fully set forth in their entirety.

67.     Denied.  These allegations are conclusions of law to which no responsive pleading is required.  To the extent a response is deemed necessary, the allegations are denied.

68.     Denied.  These allegations are conclusions of law to which no responsive pleading is required.  To the extent a response is deemed necessary, the allegations are denied.

69.     Denied.  These allegations are conclusions of law to which no responsive pleading is required.  To the extent a response is deemed necessary, the allegations are denied.

70.     Denied. These allegations are conclusions of law to which no responsive pleading is required.  To the extent a response is deemed necessary, the allegations are denied.

71.     Denied. These allegations are conclusions of law to which no responsive pleading is required.  To the extent a response is deemed necessary, the allegations are denied.

**WHEREFORE,** Answering Defendant demands judgment dismissing the Plaintiff's Second Amended Complaint, together with an award of counsel fees and costs incurred by Answering Defendant, and for such other relief as this Court may deem equitable and just.

## COUNT VIII – BREACH OF CONTRACT (THIRD PARTY BENEFICIARY)
### Plaintiff V. Schindler/Westinghouse, Belmont Behavioral Hospital, LLC and Belmont Physician Services, LLC

72.     Answering Defendant incorporates by reference its responses to the preceding allegations of Plaintiff's Second Amended Complaint as though fully set forth in their entirety.

73-77.     Denied.  These allegations are not directed to Answering Defendant and Answering Defendant is without information sufficient to form a belief as to the truth of these allegations.  The allegations are further denied as conclusions of law.

**WHEREFORE,** Answering Defendant demands judgment dismissing the Plaintiff's Second Amended Complaint, together with an award of counsel fees and costs incurred by Answering Defendant, and for such other relief as this Court may deem equitable and just.

## COUNT IX – SUCCESSOR LIABILITY – PRODUCT LINE EXCEPTION
### Plaintiff v. Schindler & Westinghouse

78.     Answering Defendant incorporates by reference its responses to the preceding allegations of Plaintiff's Second Amended Complaint as though fully set forth in their entirety.

79-83.     Denied.  These allegations are not directed to Answering Defendant and Answering Defendant is without information sufficient to form a belief as to the truth of these allegations.

**WHEREFORE,** Answering Defendant demands judgment dismissing the Plaintiff's Second Amended Complaint, together with an award of counsel fees and

costs incurred by Answering Defendant, and for such other relief as this Court may deem equitable and just.

## COUNT X – NEGLIGENCE
### Plaintiff v. Belmont Behavioral Hospital, LLC and Belmont Physician Services, LLC

84.     Answering Defendant incorporates by reference its responses to the preceding allegations of Plaintiff's Second Amended Complaint as though fully set forth in their entirety.

85-86.     Denied.  These allegations are not directed to Answering Defendant and Answering Defendant is without information sufficient to form a belief as to the truth of these allegations.

**WHEREFORE,** Answering Defendant demands judgment dismissing the Plaintiff's Second Amended Complaint, together with an award of counsel fees and costs incurred by Answering Defendant, and for such other relief as this Court may deem equitable and just.

## SEPARATE DEFENSES

1.     Plaintiff's claim may be barred by applicable Statute of Limitations and/or Statute of Repose.

2.     Plaintiff may have been contributorily negligent.

3.     Plaintiff may have been comparatively negligent.

4.     Plaintiff's claims are barred because they fail to state a claim upon which relief may be granted and Answering Defendant reserves the right to move at or before the time of trial to dismiss same.

5.      Answering Defendant was not negligent, careless or reckless and did not commit any of the wrongful acts or omissions complained of in Plaintiff's Second Amended Complaint.

6.      Answering Defendant performed each and every duty which was owed to Plaintiff and otherwise owed no duty.

7.      The alleged damages were not the proximate result of the acts or omissions of Answering Defendant.

8.      Plaintiff may be barred from recovery against Answering Defendant in that the incident/damages, if any, were caused by entities other than Answering Defendant and/or entities or persons not under the control of Answering Defendant.

9.      Plaintiff may have assumed the risk.

10.     Answering Defendant may not be amenable to the jurisdiction of this court as there is no personal or subject matter jurisdiction, venue is improper, service of process was insufficient and process was insufficient.

11.     The claims set forth in Plaintiff's Second Amended Complaint may be barred, in whole or in party, by the doctrines of laches, unclean hands, res judicata, privilege, Statute of Frauds, justification, immunity from suit, consent, discharge in bankruptcy, accord and satisfaction, fraud, estoppel or waiver.

12.     Plaintiff may have signed a release discharging the claims asserted against Answering Defendant.

13.     Plaintiff has failed to join a necessary or indispensable party without whom this action cannot proceed.

14.     Any recovery against Answering Defendant must be reduced to the extent Plaintiff has failed to mitigate, minimize or avoid the claimed damages.

15.     Plaintiff's alleged damages may have been caused by superseding and/or intervening acts of others over whom Answering Defendant had no control.

16.     Answering Defendant asserts any and all defenses listed in Pa. R.C.P. 1030.

17.     Answering Defendant's duties and responsibilities with respect to the elevators at the subject property were controlled by a contract between Answering Defendant and Belmont Behavioral Hospital, LLC.

18.     The scope of duty owed by Answering Defendant is defined by the contract in force at the time of the accident and Answering Defendants raise this contract as a defense and a bar, in whole or in part, to Plaintiffs' claims.

19.     Answering Defendant at all times properly performed its duties and obligations as set forth in the applicable contract with Belmont Behavioral Hospital, LLC.

20.     Plaintiff's Complaint contains allegations of recklessness suggesting that punitive damages might be sought.  Plaintiff is not entitled to punitive damages against Answering Defendant.

21.     Any claim for punitive damages is unconstitutional under the constitutions of the Commonwealth of Pennsylvania and the United States of America.

22.     Answering Defendant did not own or have exclusive management, possession and control of the subject elevator at any relevant time herein.

23.     *Res Ipsa Loquitur* is not applicable to this case.

24.     Answering Defendant states that in the event any product for which it is responsible is found to have been involved herein, then and in that event, it will also be found that said product, including, without limitation, all warnings, conformed to and was in compliance with the applicable laws and standards of the industry at all relevant times herein.

25.     Answering Defendant states that in the event it is found that the losses and damages alleged by Plaintiff, if any, were caused by a condition of a product for which they are responsible, then and only in that event, it will also be found that Answering Defendant did not receive notice of that condition prior to the incident involving Plaintiff.

26.     Answering Defendant states that the losses and damages alleged by Plaintiff, if any, were sustained as a direct and proximate result of the active and primary negligence, and/or breach of contract, whether express or implied, and/or breach of warranty, whether express or implied, and/or strict tort liability, and/or other misfeasance of some other person, firm, corporation or entity, for which Answering Defendant are neither responsible nor liable.

27.     Answering Defendant did not design, manufacture, sell or install the subject elevator and therefor is not responsible for any of the products liability claims asserted.

**WHEREFORE,** Defendant, ThyssenKrupp Elevator Corporation, demands judgment in its favor together with attorney's fees and costs of suit.

## CROSS CLAIM OF DEFENDANT, THYSSENKRUPP ELEVATOR CORPORATION, PURSUANT TO PA. R.C.P. 1031.1

1.      If Plaintiff sustained damages as alleged in the Second Amended Complaint, which damages are strictly denied, Answering Defendant asserts that Defendants, Schindler Elevator Corporation, Westinghouse Electric Company, LLC, and Westinghouse Electric Corporation, are liable to Plaintiff and those damages were caused solely by the acts, omissions, negligence or carelessness of these Defendants as set forth more fully in Plaintiff's Complaint, which is not admitted or adopted.

2.      If Answering Defendants is found responsible to Plaintiff, for any damages whatsoever, which damages are strictly denied, Answering Defendants are entitled to indemnification from Defendants, Schindler Elevator Corporation, Westinghouse Electric Company, LLC, and Westinghouse Electric Corporation for any and all sums of money which it may be required to pay to the Plaintiffs pursuant to common law indemnity and/or any and all contracts that existed between the parties.

3.      If Answering Defendant is found responsible to Plaintiffs for any damages whatsoever, which damages are strictly denied, then Defendants, Schindler Elevator Corporation, Westinghouse Electric Company, LLC, and Westinghouse Electric Corporation are jointly and severally liable with Answering Defendant by way of contribution.

4.      Defendants, Schindler Elevator Corporation, Westinghouse Electric Company, LLC, and Westinghouse Electric Corporation may have breached contracts applicable to this action and may be liable to Answering Defendant, ThyssenKrupp Elevator Corporation, as a result.

**WHEREFORE,** Defendant, ThyssenKrupp Elevator Corporation, demands judgment be entered in its favor and against all other parties together with attorney's fees and costs of suit.

## THIRD PARTY COMPAINT VS. BELMONT BEHAVIORAL HOSPITAL, LLC

1.      Plaintiff brings this action against Defendant/Third Party Plaintiff, ThyssenKrupp Elevator Corporation, alleging negligence and products liability in connection with an alleged incident occurring on October 11, 2018, on an elevator at Belmont Behavioral Hospital, LLC., as set forth in the Second Amended Complaint which is attached as Exhibit "A" but not admitted or adopted.

2.      At all times relevant, Third Party Plaintiff had certain service and maintenance obligations relating to the subject elevator pursuant to a contract with Third Party Defendant, Belmont Behavioral Hospital, LLC, which contract is dated  August 1, 2015 and is attached as Exhibit "B."

3.      Pursuant to the terms of the subject contract, Third Party Defendant, Belmont Behavior Health, is obligated to indemnify and defend Third Party Plaintiff.

4.      Specifically, on page 5 of the contract Third Party Defendant agreed as follows:

> In consideration of ThyssenKrupp Elevator performing the services herein specified, you expressly agree, to the fullest extent permitted by law, to indemnify, defend, save harmless, discharge, release and forever acquit ThyssenKrupp Elevator, our employees, officers, agents, affiliates, and subsidiaries from and against any and all claims, demands, suits, and proceedings brought against ThyssenKrupp Elevator, our employees, officers, agents, affiliates and subsidiaries for loss, property damage (including damage to the equipment which is subject maller of this agreement), personal injury or death that are alleged to have been caused by the Purchaser or any others in

connection with the presence, use, misuse, maintenance, installation, removal, manufacture, design, operation or condition of the equipment covered by this agreement, or the associated areas surrounding such equipment.  Your duty to indemnify does not apply to the extent that the loss, property damage (including damage to the equipment which is subject matter of this agreement), personal injury or death is determined to be caused by or resulting from the negligence of ThyssenKrupp Elevator and/or employees.  You recognize that your obligation to ThyssenKrupp Elevator under this clause includes payment of attorney's fees, court costs, judgments, settlements, interest and any other expenses of litigation arising out of such claims or lawsuits.

5.      Additionally on page 5 of the contract, Third Party Defendant agreed to name Third Party Plaintiff as an additional insured on its insurance policy as follows:

You expressly agree to name ThyssenKrupp Elevator Corporation along with its officers, agents, affiliates and subsidiaries as additional Insureds In your liability and any excess (umbrella) liability Insurance Policy(ies).    Such Insurance must Insure ThyssenKrupp Elevator Corporation, along with its officers, agents, affiliates and subsidiaries for those claims and/or losses referenced in the above paragraph, and for claims and/or losses arising from the sole negligence or responsibility of ThyssenKrupp Elevator Corporation and/or its officers, agents, affiliates and subsidiaries.  Such Insurance must specify that its coverage is primary and non-contributor.  You hereby waive the right of subrogation.

6.      Accordingly, Third Party Defendant is responsible to indemnify and defend Third Party Plaintiff for this in this action and to provide additional insurance coverage.

7.      In the event that Third Party Defendant fails to indemnify and defend and/or failed to obtain the requisite insurance, Third Party Defendant is liable to Third Party Plaintiff for breach of the subject contract.

WHEREFORE, Third Party Defendant is liable to Third Party Plaintiff for indemnification and insurance coverage along with breach of contract.

SHIMBERG & FRIEL, P.C.
Attorneys for Defendant/Third
Party Plaintiff, ThyssenKrupp
Elevator Corporation

By: /s/ Nancy A. Nolan
      Nancy A. Nolan, Esquire

Dated:  January 25, 2021

**ATTORNEY'S VERIFICATION**

I, Nancy A. Nolan, Esquire, Attorney for Defendant, ThyssenKrupp Elevator Corporation, ("TKE" / "Answering Defendants"), states that the facts set forth in the foregoing Answer to Plaintiffs' Second Amended Complaint and in the Third Party Complaint against Belmont Behavioral Hospital, LLC, are true and correct to the best of my knowledge, information, and belief.   The undersigned understands that the statements therein are made subject to the penalties of 18 Pa. C. S., Section 4904 relating to unsworn falsification to authorities.

By: _/s/ Nancy A. Nolan_____
      Nancy A. Nolan, Esquire
      Attorney for Defendant/Third Party
      Plaintiff

Dated: January 25, 2021

## CERTIFICATION OF SERVICE

I, Nancy A. Nolan, Esquire, certify a true and correct copy of the Answer of Defendants, ThyssenKrupp Elevator Corporation, to Plaintiff's Second Amended Complaint, was submitted to court to be filed and served this date via electronic filing upon counsel of record for all parties on January 25, 2021.


By:  /s/  Nancy A. Nolan
       Nancy A. Nolan, Esquire
       Attorneys for Defendant/Third Party Plaintiff


Dated: January 25, 2021

# EXHIBIT A

Filed and Attested by the
Office of Judicial Records
30 SEP 2020 09:20 am
E. MEENAN

| | |
|---|---|
| MORRIS WILSON, P.C. | THIS IS NOT AN ARBITRATION |
| Seth D. Wilson, Esquire | MATTER.  AN ASSESSMENT OF |
| Attorney I.D. No. 91178 | DAMAGES HEARING IS REQUIRED |
| David R. Jacquette, Esquire | JURY TRIAL DEMANDED. |
| Attorney I.D. No. 309586 | |
| 161 Washington Street, Suite 900 | |
| Conshohocken, PA 19428 | |
| (610) 825-0500 | |
| Fax (610) 834-1776 | Attorneys for Plaintiff |

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY, PENNSYLVANIA
CIVIL ACTION - LAW

JASMINE SUMAIR                      :
251 Garden Avenue                   :     NO.  200700225
Horsham, PA 19044                   :
                                    :
                  *Plaintiff,*      :
                                    :
        v.                          :
                                    :
THYSSENKRUPP ELEVATOR CORPORATION   :     JURY TRIAL DEMANDED
D/B/A THYSSENKRUPP ELEVATORS        :
250 King Manor Drive                :
King of Prussia, PA                 :
                                    :
        and                         :
                                    :
SCHINDLER ELEVATOR CORPORATION      :
840 North Lenola Road, Suite 122    :
Moorestown, NJ 08057                :
                                    :
        and                         :
                                    :
WESTINGHOUSE ELECTRIC COMPANY, LLC  :
20 Whippany Road                    :
Morristown, NJ 07960                :
                                    :
        and                         :

WESTINGHOUSE ELECTRIC CORPORATON                    :
20 Whippany Road                                     :
Morristown, NJ 07960                                 :
                                                     :
     And                                             :
                                                     :
BELMONT BEHAVIORAL HOSPITAL, LLC                     :
4200 Monument Road                                   :
Philadelphia, PA 19131                               :
                                                     :
         and                                         :
                                                     :
BELMONT PHYSICIAN SERVICES, LLC                      :
4200 Monument Road                                   :
Philadelphia, PA 19131                               :
                                                     :
                              *Defendants.*          :

---

## NOTICE TO DEFEND

### NOTICE

You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by an attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A**

### AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas de estas demandas expuestas en las páginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificación. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. See avisado que si usted no se defiende, la corte tomará medidas y puede continuar la demanda en contra suya sin previo aviso o notificación. Además, la corte puede decidir a favor del demandante y requiere que usted compla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LAWYER GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

PHILADELPHIA BAR ASSOCIATION
LAWYER REFERRAL AND
INFORMATION SERVICE
1101 Market St., 11th Floor
Philadelphia, Pennsylvania          19107
Telephone:  215-238-6300

USTED DEBE LLEVAR ESTE PAPEL          SU          ABOGADO INMEDIATAMENTE.  SI USTED NO HACE Que Un ABOGADO VAYA A O LLAME POR TELÉFONO La OFICINA DISPUESTA ABAJO.  ESTA OFICINA PUEDE PROVEER De USTED La INFORMACIÓN SOBRE EMPLEAR A un ABOGADO.

SI      USTED      NO      PUEDE PERMITIRSE   AL   HIRE   A   un ABOGADO, ESTA OFICINA PUEDE PODER PROVEER DE USTED LA INFORMACIÓN          SOBRE          LAS AGENCIAS EN QUE LOS SERVICIOS JURÍDICOS de la OFERTA de MAYO A LAS   PERSONAS   ELEGIBLES   Un HONORARIO REDUCIDO O NINGÚN HONORARIO.

ASOCIACIÓN DE LICENCIADOS DE
FILADELFIA
SERVICIO DE REFERENCIA E
INFORMACIÓN LEGAL
1101 Market Street, 11th Floor
Filadelfia, Pennsylvania  19107
Teléfono:  215-238-6300

MORRIS WILSON, P.C.
Seth D. Wilson, Esquire
Attorney I.D. No. 91178
David R. Jacquette, Esquire
Attorney I.D. No. 309586
161 Washington Street, Suite 900
Conshohocken, PA 19428
(610) 825-0500
Fax (610) 834-1776

THIS IS NOT AN ARBITRA-
TION MATTER. AN ASSESSMENT OF
DAMAGES HEARING IS REQUIRED.
JURY TRIAL DEMANDED.

Filed and Attested by the
Office of Judicial Records
05 JUL 2020 09:20 am
E. HEENAN

Attorneys for Plaintiff

---

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY, PENNSYLVANIA
CIVIL ACTION - LAW

JASMINE SUMAIR                              :
251 Garden Avenue                          :          NO.  200700225
Horsham, PA 19044                          :
                                           :
                    *Plaintiff,*           :
                                           :
          v.                               :
                                           :
THYSSENKRUPP ELEVATOR CORPORATION          :          JURY TRIAL DEMANDED
D/B/A THYSSENKRUPP ELEVATORS               :
250 King Manor Drive                       :
King of Prussia, PA                        :
                                           :
          and                              :
                                           :
SCHINDLER ELEVATOR CORPORATION             :
840 North Lenola Road, Suite 122           :
Moorestown, NJ 08057                       :
                                           :
          and                              :
                                           :
WESTINGHOUSE ELECTRIC COMPANY, LLC         :
20 Whippany Road                           :
Morristown, NJ 07960                       :
                                           :
          and                              :
                                           :
WESTINGHOUSE ELECTRIC CORPORATON           :
20 Whippany Road                           :
Morristown, NJ 07960                       :

And                                                        :
                                                           :
BELMONT BEHAVIORAL HOSPITAL, LLC          :
4200 Monument Road                                :
Philadelphia, PA 19131                              :
                                                           :
          and                                             :
                                                           :
BELMONT PHYSICIAN SERVICES, LLC         :
4200 Monument Road                                :
Philadelphia, PA 19131                              :
                                                           :
                              *Defendants*.            :
                                                           :

---

## SECOND AMENDED COMPLAINT

1.      Plaintiff, Jasmine Sumair, is an adult individual residing at 251 Garden Avenue,

Horsham, PA 19044.

2.      Thyssenkrupp      Elevator      Corporation      d/b/a      Thyssenkrupp      Elevators

("ThyssenKrupp") is, upon information and belief, a Delaware corporation with a business address

of 250 King Manor Drive, King of Prussia, PA. ThyssenKrupp regularly conducts business in the

Commonwealth of Pennsylvania and the City of Philadelphia.

3.      Schindler Elevator Corporation ("Schindler") is, upon information and belief, a

Delaware corporation with a business address of 840 North Lenola Road, Suite 122, Moorestown,

NJ 08057. Schindler regularly conducts business in the Commonwealth of Pennsylvania and the

City of Philadelphia.

4.      Westinghouse Electric Company, LLC is, upon information and belief, a Delaware

corporation with a business address of 20 Whippany Road, Morristown, NJ 07960. Westinghouse

regularly conducts business in the Commonwealth of Pennsylvania and the City of Philadelphia.

2

5.      Westinghouse Electric Corporation is, upon information and belief, a Delaware corporation with a business address of 20 Whippany Road, Morristown, NJ 07960. Westinghouse regularly conducts business in the Commonwealth of Pennsylvania and the City of Philadelphia. Defendants Westinghouse Electric Company, LLC and Westinghouse Electric Corporation will be collectively referred to hereinafter as "Westinghouse".

6.      Belmont Behavior Hospital, LLC is, upon information and belief, a Delaware limited liability company with its principal place of business located at 4200 Monument Road, Philadelphia, PA 19131.

7.      Belmont Physician Services, LLC is, upon information and belief, a Delaware limited liability company with its principal place of business located at 4200 Monument Road, Philadelphia, PA 19131.

8.      At all times material hereto, Belmont Behavioral Hospital, LLC, owned, possessed, controlled, and/or maintained the property located at 4200 Monument Road, Philadelphia, PA 19131.

9.      In the alternative, Belmont Physician Services, LLC owned, possessed, controlled, and/or maintained the property located at 4200 Monument Road, Philadelphia, PA 19131.

10.     At all times material hereto, Belmont Behavioral Hospital, LLC and/or Belmont Physician Services, LLC carried on a continuous and systematic part of their general business in the Commonwealth of Pennsylvania by owning and operating two (2) behavioral hospitals within the Commonwealth.

11.     At all times material hereto, Thyssenkrupp designed, engineered, manufactured, sold, delivered, installed, maintained and/or serviced elevators within the Commonwealth of Pennsylvania, including the specific elevator which caused Plaintiff's injuries as set forth below.

3

12.     At all times material hereto, Thyssenkrupp engaged in significant, substantial, regular and continuous business within the Commonwealth of Pennsylvania, including the City of Philadelphia.

13.     Upon information and belief, in 1989, Schindler acquired, merged with, consolidated with, or otherwise became the successor of Westinghouse. After the acquisition, merger, consolidation, or succession, Schindler undertook the same manufacturing operation as Westinghouse and continued to design, manufacture and sell elevators such as the one which caused Plaintiff's injuries as set forth below.

14.     At all times material hereto, Schindler and/or Westinghouse designed, engineered, manufactured, sold, delivered, installed, and/or serviced elevators within the Commonwealth of Pennsylvania, including the specific elevator which caused Plaintiff's injuries as set forth below.

15.     At all times material hereto, Schindler and/or Westinghouse engaged in significant, substantial, regular and continuous business within the Commonwealth of Pennsylvania, including the City of Philadelphia.

16.     At all times material hereto, Plaintiff Jasmine Sumair was employed by Belmont Physicians Services, LLC as a Unit Health Coordinator at Belmont Behavioral Hospital.

17.     At all times material hereto, Belmont Physician Services, LLC, not Belmont Behavioral Hospital, LLC, was the entity issuing compensation to Plaintiff for her employment services performed at Belmont Behavioral Hospital.

18.     In the alternative, Plaintiff Jasmine Sumair was employed by Belmont Behavioral Hospital, LLC as a Unit Health Coordinator at Belmont Behavioral Hospital.

19.     At the time of the incident at issue, Plaintiff could not have been simultaneously employed by both Belmont Physician Services, LLC and Belmont Behavioral Hospital, LLC.

4

20.     Upon information and belief, at all times material hereto and pursuant to an agreement between Thyssenkrupp and Belmont Behavioral Hospital, LLC and/or Belmont Physician Services, LLC (the "Thyssenkrupp Agreement"), Thyssenkrupp was responsible for the maintenance, servicing, inspection, and/or repair of the elevators, including the East elevator (hereinafter the "Elevator"), located at Belmont Behavioral Hospital.   The Thyssenkrupp Agreement is a writing which is in the exclusive possession of Defendants.  Plaintiff does not have access to the Thyssenkrupp Agreement and therefore is unable to attach Thyssenkrupp the Agreement hereto. In the alternative, the Thyssenkrupp Agreement is an oral agreement which required Thyssenkrupp to service, maintain, inspect and/or repair any defects in the Elevator's mechanical operation.

21.     Upon information and belief, at all times material hereto and pursuant to an agreement between Schindler and/or Westinghouse and Belmont Behavioral Hospital, LLC and/or Belmont Physician Services, LLC (the "Schindler Agreement"), Belmont Behavioral Hospital, LLC and/or Belmont Physician Services, LLC agreed to indemnify Schindler and/or Westinghouse and was responsible for the maintenance, servicing, inspection, and/or repair of the elevators, including the Elevator, located at the hospital. The Schindler Agreement is a writing which is in the exclusive possession of Defendants. Plaintiff does not have access to the Schindler Agreement and therefore is unable to attach the Schindler Agreement hereto.  In the alternative, the Schindler Agreement is an oral agreement which required Belmont Behavioral Hospital, LLC and/or Belmont Physician Services, LLC to indemnify Schindler and/or Westinghouse and was responsible for the maintenance, servicing, inspection, and/or repair of the elevators, including the Elevator.

Case ID: 200700223

22.     On or about October 11, 2018 Jasmine Sumair was using a pushcart within Belmont Behavioral Hospital to deliver supplies to the various units of the hospital located on different floors.

23.     After riding the Elevator from the basement level to the first floor and permitting several other occupants to exit the Elevator onto the first floor, Plaintiff attempted to exit the Elevator when the wheels of the pushcart became stuck in an uneven gap between the floor of the Elevator and the floor of the hospital.

24.     Plaintiff maneuvered her body past the cart and onto the hospital floor to attempt to dislodge the pushcart from said gap and pull it onto the hospital floor.

25.     While Plaintiff was attempting to dislodge the cart, the Elevator door began to close.

26.     Plaintiff used her right hand to hold open the Elevator door while using her left hand to dislodge and pull the cart out of the elevator.

27.     Immediately after Plaintiff dislodged the pushcart, the Elevator door closed and entrapped her right hand within the Elevator door.  Plaintiff was unable to extricate her arm from the Elevator door.

28.     Upon hearing Plaintiff's screams for help, three (3) individuals came to Plaintiff's aid and freed her hand from the Elevator door by forcefully pulling the door open.

29.     The defective nature of the Elevator which Defendants designed, engineered, manufactured, sold, delivered, installed, and/or serviced caused serious injuries to Plaintiff.

30.     Defendants were negligent by failing to provide a safe means of travel in the Elevator.

6

31.     As a result of the aforementioned incident, Plaintiff sustained serious personal injuries to her right hand and fingers, right wrist, right arm, right shoulder, neck, brachial plexus, and neurologic system, all of which have seriously impaired her bodily function and constitute permanent injuries which may impair her earning capacity.  Plaintiff Jasmine Sumair has in the past and may in the future experience great mental and physical pain and suffering.  Plaintiff Jasmine Sumair has in the past and may in the future incur expenses in the treatment of her injuries. Plaintiff has in the past and may in the future continue to incur other expenses or other financial losses. Plaintiff Jasmine Sumair has in the past and may in the future be prevented from attending to her usual and customary activities.  Plaintiff Jasmine Sumair has in the past and may in the future sustain a loss of life's pleasures.

## COUNT I – NEGLIGENCE
### Plaintiff v. Thyssenkrupp

32.     Plaintiff hereby incorporates the averments set forth in paragraphs 1 through 31 as if fully set forth at length herein.

33.     At all times material hereto, Thyssenkrupp had a duty to determine whether the Elevator it designed, engineered, manufactured, sold, delivered, serviced, installed and/or maintained at Belmont Behavioral Hospital was unreasonably dangerous.

34.     The above-described incident was the result of negligence and carelessness of Thyssenkrupp, which consisted of the following:

    (a)     failure to ensure that the Elevator doors would not close upon and/or entrap objects or individuals;

    (b)     failure to design, manufacture, sell, supply, and distribute an Elevator which was reasonably safe for use by its intended users;

Case ID: 200700223

(c)     failure to design, manufacture, sell, supply, and distribute an Elevator with a safe and reliable proximity sensor;

(d)     failure to design, manufacture, sell, supply, and distribute an Elevator that would adequately operate without mechanical failures;

(e)     failure to design, manufacture, sell, supply, and distribute an Elevator that would properly come to rest flush with the hospital floor;

(f)     failure to inspect or otherwise evaluate the safety of the Elevator;

(g)     failure to test and/or perform quality controls to ensure that the Elevator was safe for use by its intended users;

(h)     failure to properly hire, train, supervise, and retain competent personnel to design, manufacture, install and maintain the Elevator;

(i)     failure to supply the parts necessary to make the Elevator safe for its intended users;

(j)     failure to ensure that the Elevator doors remained open for a sufficient period of time before closing;

(k)     failure to ensure that the Elevator was in safe working order;

(l)     failure to conduct regular inspections of the Elevator;

(m)     failure to properly maintain the Elevator so that the doors would not close upon and/or entrap objects or individuals;

(n)     failure to warn of the unreasonably dangerous condition of the Elevator;

(o)     failure to comply with all relevant mechanical and safety regulations; and

(p)     failure to make necessary repairs to the elevator to ensure the doors would not close upon and/or entrap objects or individuals;

8

Case ID: 200700223

35.     Thyssenkrupp had actual or constructive notice of the risks posed by the defective design of the Elevator proximity sensor and recklessly disregarded the safety and security of its customers by failing repair the Elevator and failing to warn of the dangers posed by the Elevator.

36.     Plaintiff's injuries were a direct and proximate result of the negligence of Thyssenkrupp.

WHEREFORE, Plaintiff demands judgment against Thyssenkrupp individually and/or jointly and severally in an amount in excess of the compulsory arbitration limits, plus costs, interest, and all other damages deemed recoverable according to law.

## COUNT II – STRICT LIABILITY
### Plaintiff v. Thyssenkrupp

37.     Plaintiff hereby incorporates the averments set forth in paragraphs 1 through 36 above as if fully set forth at length herein.

38.     The Elevator was designed, manufactured, and sold by Thyssenkrupp in a defective condition, unreasonably dangerous to users and consumers because:

   (a)     the proximity sensor failed to identify and/or detect when objects and/or persons were within the doors and at risk of becoming entrapped;

   (b)     the proximity sensor was placed in an area which failed to detect when objects and/or persons were within the doors and at risk of becoming entrapped;

   (c)     the Elevator lacked a safety system which prevented the door from closing on objects and/or persons;

9

(d)     the Elevator lacked proper warnings as to the safety issues presented to individuals by a proximity sensor which failed to detect when objects and/or persons were within the two doors and at risk of becoming entrapped;

(e)     the Elevator doors failed to remain open for a sufficient period of time to ensure occupants a safe entrance and exit from the elevator; and

(f)     the Elevator failed to come to rest flush with the hospital floor.

39.     The Elevator left the control of Thyssenkrupp while lacking the elements necessary to make it safe for its intended use.

40.     The Elevator failed to meet consumer expectations regarding a safe and secure elevator door closing system.

41.     The benefits of designing an elevator door closing system that provided safety for users and ensured they would not become entrapped by the doors far outweighed the cost of providing such a closing system.

42.     At all times relevant hereto, it was feasible for Thyssenkrupp to design, manufacture, and sell the Elevator in a condition where the door would automatically reopen when an object was in the path of the door closing and would not close on Plaintiff's hand.

43.     Plaintiff's injuries were a direct and proximate result of the design, manufacture and sale of the defective Elevator.

44.     Thyssenkrupp had actual or constructive notice of the risks posed by the defective design of the Elevator's door closing system and recklessly disregarded the safety of its customers by failing to warn them of the dangers posed by the defective closing system.

Case ID: 20070022

WHEREFORE, Plaintiff demands judgment against Thyssenkrupp individually and/or jointly and severally in an amount in excess of the compulsory arbitration limits, plus costs, interest, and all other damages deemed recoverable according to law.

### COUNT III- BREACH OF IMPLIED WARRANTIES
**Plaintiff v. Thyssenkrupp**

45.     Plaintiff hereby incorporates the averments set forth in paragraphs 1 through 44 as if fully set forth at length herein.

46.     Thyssenkrupp, as the manufacturer and seller of the Elevator, has impliedly warranted that the Elevator was of merchantable quality and fit for use.

47.     By failing to include an Elevator door closing system that was safe for its users, Thyssenkrupp breached its implied warranties of merchantability and fitness for use.

48.     Plaintiff's injuries were a direct and proximate result of Thyssenkrupp's breach of its implied warranties.

WHEREFORE, Plaintiff demands judgment against Thyssenkrupp individually and/or jointly and severally in an amount in excess of the compulsory arbitration limits, plus costs, interest and all other damages deemed recoverable according to law.

### COUNT IV – NEGLIGENCE
**Plaintiff v. Schindler and Westinghouse**

49.     Plaintiff hereby incorporates the averments set forth in paragraphs 1 through 48 as if fully set forth at length herein.

50.     At all times material hereto, Schindler and/or Westinghouse had a duty to determine whether the Elevator it designed, engineered, manufactured, sold, delivered, serviced, and installed at Belmont Behavioral Hospital was unreasonably dangerous.

Case ID: 200700225

51.     The above-described incident was the result of negligence and carelessness of Schindler and/or Westinghouse, which consisted of the following:

(a)     failure to ensure that the Elevator doors would not close upon and/or entrap objects or individuals;

(b)     failure to design, manufacture, sell, supply, and distribute an Elevator which was reasonably safe for use by its intended users;

(c)     failure to design, manufacture, sell, supply, and distribute an Elevator with a safe and reliable proximity sensor;

(d)     failure to design, manufacture, sell, supply, and distribute an Elevator that would adequately operate without mechanical failures;

(e)     failure to design, manufacture, sell, supply, and distribute an Elevator that would properly come to rest flush with the hospital floor;

(f)     failure to inspect or otherwise evaluate the safety of the Elevator;

(g)     failure to test and/or perform quality controls to ensure that the Elevator was safe for use by its intended users;

(h)     failure to properly hire, train, supervise, and retain competent personnel to design, manufacture and install the Elevator;

(i)     failure to supply the parts necessary to make the Elevator safe for its intended users;

(j)     failure to ensure that the Elevator doors remained open for a sufficient period of time before closing;

(k)     failure to ensure that the Elevator was in safe working order;

(l)     failure to conduct regular inspections of the Elevator;

Case ID: 200700223

(m)    failure to properly maintain the Elevator so that the doors would not close upon and/or entrap objects or individuals;

(n)    failure to warn of the unreasonably dangerous condition of the Elevator;

(o)    failure to comply with all relevant mechanical and safety regulations;

(p)    failure to make necessary repairs to the elevator to ensure the doors would not close upon and/or entrap objects or individuals;

52.    Schindler had actual or constructive notice of the risks posed by the defective design of the Elevator proximity sensor and recklessly disregarded the safety and security of its customers by failing to repair the Elevator and failing to warn of the dangers posed by the Elevator.

53.    Plaintiff's injuries were a direct and proximate result of the negligence of Schindler.

WHEREFORE, Plaintiff demands judgment against Schindler and/or Westinghouse individually and/or jointly and severally in an amount in excess of the compulsory arbitration limits, plus costs, interest, and all other damages deemed recoverable according to law.


## COUNT V – STRICT LIABILITY
### Plaintiff v. Schindler & Westinghouse

54.    Plaintiff hereby incorporates the averments set forth in paragraphs 1 through 53 above as if fully set forth at length herein.

55.    The Elevator was designed, manufactured, and sold by Schindler and/or Westinghouse in a defective condition, unreasonably dangerous to users and consumers because:

(a)    the proximity sensor failed to identify and/or detect when objects and/or persons were within the doors and at risk of becoming entrapped;

13

(b)    the proximity sensor was placed in an area which failed to detect when objects and/or persons were within the doors and at risk of becoming entrapped;

(c)    the Elevator lacked a safety system which prevented the door from closing on objects and/or persons;

(d)    the Elevator lacked proper warnings as to the safety issues presented to individuals by a proximity sensor which failed to detect when objects and/or persons were within the two doors and at risk of becoming entrapped;

(e)    the Elevator doors failed to remain open for a sufficient period of time to ensure occupants a safe entrance and exit from the elevator; and

(f)    the Elevator failed to come to rest flush with the hospital floor.

56.    The Elevator left the control of Schindler and/or Westinghouse while lacking the elements necessary to make it safe for its intended use.

57.    The Elevator failed to meet consumer expectations regarding a safe and secure elevator door closing system.

58.    The benefits of designing an elevator door closing system that provided safety for users and ensured they would not become entrapped by the doors far outweighed the cost of providing such a closing system.

59.    At all times relevant hereto, it was feasible for Schindler and/or Westinghouse to design, manufacture, and sell the Elevator in a condition where the door would automatically reopen when an object was in the path of the door closing and would not close on Plaintiff's hand.

60.    Plaintiff's injuries were a direct and proximate result of the design, manufacture and sale of the defective Elevator.

Case ID: 200700225

61.     Schindler and/or Westinghouse had actual or constructive notice of the risks posed by the defective design of the Elevator's door closing system and recklessly disregarded the safety of its customers by failing to warn them of the dangers posed by the defective closing system.

WHEREFORE, Plaintiff demands judgment against Schindler and/or Westinghouse individually and/or jointly and severally in an amount in excess of the compulsory arbitration limits, plus costs, interest, and all other damages deemed recoverable according to law.

## COUNT VI – BREACH OF IMPLIED WARRANTIES
### Plaintiff v. Schindler & Westinghouse

62.     Plaintiff hereby incorporates the averments set forth in paragraphs 1 through 61 as if fully set forth at length herein.

63.     Schindler and/or Westinghouse, as the manufacturer and seller of the Elevator, has impliedly warranted that the Elevator was of merchantable quality and fit for use.

64.     By failing to include an Elevator door closing system that was safe for its users, Schindler and/or Westinghouse breached its implied warranties of merchantability and fitness for use.

65.     Plaintiff's injuries were a direct and proximate result of Schindler's and/or Westinghouse's breach of its implied warranties.

WHEREFORE, Plaintiff demands judgment against Schindler and/or Westinghouse individually and/or jointly and severally in an amount in excess of the compulsory arbitration limits, plus costs, interest and all other damages deemed recoverable according to law.

15

**COUNT VII – BREACH OF CONTRACT (THIRD PARTY BENEFICIARY)**
**Plaintiff v. Thyssenkrupp, Belmont Behavioral Hospital, LLC and Belmont Physician Services, LLC**

66.    Plaintiff hereby incorporates the averments set forth in paragraphs 1 through 63 as if fully set forth at length herein.

67.    Upon information and belief, Defendants Thyssenkrupp, Belmont Behavioral Hospital, LLC and/or Belmont Physician Services, LLC intended that Plaintiff, as an employee working at Belmont Hospital and using the elevators to perform her work duties on a daily basis, would be a third-party beneficiary of the Thyssenkrupp Agreement.

68.    Upon information and belief, Belmont Behavioral Hospital, LLC and/or Belmont Physician Services, LLC entered into the Thyssenkrupp Agreement to ensure that the elevators located at the hospital were maintained, serviced, inspected, and/or repaired so that individuals such as Plaintiff would have a safe means of travel from floor to floor in the hospital.

69.    Plaintiff is an intended third-party beneficiary of the Thyssenkrupp Agreement.

70.    Thyssenkrupp, Belmont Behavioral Hospital, LLC and/or Belmont Physician Services, LLC breached the Thyssenkrupp Agreement by failing to maintain, service, inspect, and/or repair the Elevator in the hospital.

71.    Plaintiff's injuries were a direct and proximate result of Defendants' breach of the Thyssenkrupp Agreement.

WHEREFORE, Plaintiff demands judgment against Defendants Thyssenkrupp, Belmont Behavioral Hospital, LLC and/or Belmont Physician Services, LLC, individually and/or jointly and severally in an amount in excess of the compulsory arbitration limits, plus costs, interest and all other damages deemed recoverable according to law.

Case ID: 200700225

## COUNT VIII - BREACH OF CONTRACT (THIRD PARTY BENEFICIARY)
### Plaintiff v. Schindler/Westinghouse, Belmont Behavioral Hospital, LLC and Belmont Physician Services, LLC

72.     Plaintiff hereby incorporates the averments set forth in paragraphs 1 through 71 as if fully set forth at length herein.

73.     Upon information and belief, Defendants Schindler, Westinghouse, Belmont Behavioral Hospital, LLC and/or Belmont Physician Services, LLC intended that Plaintiff, as an employee working at Belmont Hospital and using the elevators to perform her work duties on a daily basis, would be a third-party beneficiary of the Schindler Agreement.

74.     Upon information and belief, Belmont Behavioral Hospital, LLC and/or Belmont Physician Services, LLC entered into the Schindler Agreement with Schindler and/or Westinghouse to ensure that the elevators located at the hospital were maintained, serviced, inspected, and/or repaired so that individuals such as Plaintiff would have a safe means of travel from floor to floor in the hospital.

75.     Plaintiff is an intended third-party beneficiary of the Schindler Agreement.

76.     Schindler, Westinghouse, Belmont Behavioral Hospital, LLC and/or Belmont Physician Services, LLC breached the Agreement by failing to maintain, service, inspect, and/or repair the Elevator in the hospital.

77.     Plaintiff's injuries were a direct and proximate result of Defendants' breach of the Schindler Agreement.

WHEREFORE, Plaintiff demands judgment against Defendants Schindler, Westinghouse, Belmont Behavioral Hospital, LLC and/or Belmont Physician Services, LLC, individually and/or jointly and severally in an amount in excess of the compulsory arbitration limits, plus costs, interest and all other damages deemed recoverable according to law.

Case ID: 20070022

## COUNT IX – SUCCESSOR LIABILITY – PRODUCT LINE EXCEPTION
### Plaintiff v. Schindler & Westinghouse

78.     Plaintiff hereby incorporates the averments set forth in paragraphs 1 through 77 as
if fully set forth at length herein.

79.     At all times prior to 1989, Westinghouse designed, manufactured and sold the
elevator product line, including the Elevator, which caused Plaintiff's injury.

80.     The Elevator sold by Westinghouse and which injured Plaintiff was in a defective
condition and unreasonable dangerous to users and consumers.

81.     In and after 1989, Schindler acquired all or substantially all of the manufacturing
assets of Westinghouse, including the product line of the Elevator which caused Plaintiff's
injury, at which time:

(a)     Schindler undertook the same manufacturing operation as Westinghouse
with regard to the elevator product line;

(b)     Schindler actually or impliedly agreed to assume all liabilities of
Westinghouse arising out of the elevator product line;

(c)     Schindler continued to advertise the elevator product line as an ongoing
enterprise;

(d)     Schindler maintained and continued to provide elevator products to the
previous customers of Westinghouse;

(e)     Schindler deliberately exploited the elevator product line's established
reputation; and

(f)     Schindler and Westinghouse were merged or consolidated.

Case ID: 20070022

82.     As a result of the acquisition of Westinghouse by Schindler, Plaintiff's remedies against Westinghouse for her injuries may be destroyed.

83.     Schindler is liable to Plaintiff for the injuries caused by the elevator at issue.

WHEREFORE, Plaintiff demands judgment against Defendant Schindler and/or Westinghouse, individually and/or jointly and severally in an amount in excess of the compulsory arbitration limits, plus costs, interest and all other damages deemed recoverable according to law.

## COUNT  X – NEGLIGENCE
### Plaintiff v. Belmont Behavioral Hospital, LLC and Belmont Physician Services, LLC

84.     Plaintiff hereby incorporates the averments set forth in paragraphs 1 through 83 as if fully set forth at length herein.

85.     The injuries to Plaintiff, as aforesaid, were the direct result of the negligence and carelessness of Belmont Behavioral Hospital, LLC and/or Belmont Physician Services, LLC, which consisted of the following:

(a)     permitting an unsafe condition of the Elevator to exist;

(b)     failure to properly maintain and service the Elevator;

(c)     failure to provide Plaintiff with a safe Elevator;

(d)     failure to eliminate hazards posed by the Elevator;

(e)     failure to inspect the Elevator and discover the unreasonably dangerous condition of the elevator;

(f)     failure to warn Plaintiff of the unreasonably dangerous condition of the Elevator; and

(g)     failing to exercise reasonable care in making or keeping the hospital and Elevator safe for business invitees, including Plaintiff.

19

86.     Plaintiff's injuries were a direct and proximate result of the negligence of Belmont Behavioral Hospital, LLC and/or Belmont Physician Services, LLC.

WHEREFORE, Plaintiff demands judgment against Belmont Behavioral Hospital, LLC and Belmont Physician Services, LLC, individually and/or jointly and severally in an amount in excess of the compulsory arbitration limits, plus costs, interest, and all other damages deemed recoverable according to law.

MORRIS WILSON, P.C.

Dated:  September 28, 2020          By:_____

Seth D. Wilson, Esquire
David R. Jacquette, Esquire
Attorneys for Plaintiff

Case ID: 20070022

VERIFICATION

I, Jasmine Sumair, hereby certify that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information and belief. I understand that statements made herein are subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsification to authorities.

Dated:   9/27/20                              _____

                                             Jasmine Sumair

MORRIS WILSON, P.C.
Seth D. Wilson, Esquire
Attorney I.D. No. 91178
David R. Jacquette, Esquire
Attorney I.D. No. 309586
161 Washington Street, Suite 900
Conshohocken, PA 19428
(610) 825-0500

Filed and Attested by the
Office of Judicial Records
30 SEP 2020 09:20 am
E. MEENAN

Attorneys for Plaintiff

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY, PENNSYLVANIA
CIVIL ACTION - LAW

JASMINE SUMAIR                          :        NO.  200700225
                                        :
            v.                          :
                                        :
THYSSENKRUPP ELEVATOR CORPORATION,      :
et al.                                  :

## CERTIFICATE OF SERVICE

I, David R. Jacquette, Esquire, hereby certifies that I will serve a true and correct copy of

Plaintiff's Second Amended Complaint in accordance with Pa.R.C.P. 440 to all parties not served

electronically, and all other parties will be served by the Court in accordance with Pa.R.C.P.

205.4(g), as follows:

Nancy A. Nolan, Esquire
Shimberg & Friel, PC
20 Brace Road
Suite 350
Cherry Hill, NJ 08034

Shannon R. Harkins, Esquire
T. Shane Mayes, Esquire
Moore Ingram Johnson and Steele LLP
3909 Hartzdale Drive, Suite 901
Camp Hill, PA  17011

Keith E. Johnston, Esquire
Lucas and Cavalier, LLC
1500 Walnut Street, Suite 1500
Philadelphia, PA  19102


MORRIS WILSON, P.C.


Dated:   09/29/2020                          By:_____
                                                       David R. Jacquette, Esquire
                                                       Attorney for Plaintiff

2

Case ID: 2007002?

# EXHIBIT B



Redacted

# Platinum Service Agreement

**Purchaser:**   BELMONT BEHAVIORAL HOSPITAL, LLC
4200 MONUMENT RD
PHILADELPHIA, PA 19131-1625

Hereinafter referred to as "Purchaser", "you", and "your".

**By:**   ThyssenKrupp Elevator Corporation
250 King Manor Drive
King of Prussia, PA 19406
Phone: 610-992-8180
Fax: 610-992-8182
www.thyssenkruppelevator.com

Hereinafter referred to as "ThyssenKrupp Elevator Corporation", "ThyssenKrupp Elevator", "we", "us" and "our".

## PLATINUM  SERVICE AGREEMENT

ThyssenKrupp Elevator agrees to maintain Purchaser's elevator equipment described below in accordance with this agreement. We will endeavor to provide a comprehensive maintenance program designed to protect your investment and maximize the performance, safety, and life span of the elevator equipment to be maintained.

### Equipment To Be Maintained

| Building Name | Building Location | Manufacturer | Type Of Unit | Unit ID | # Of Stops |
|---|---|---|---|---|---|
| BELMONT BEHAVIORAL HOSPITAL | 4200 MONUMENT RD | Other | Hydraulic | | 4 |
| BELMONT BEHAVIORAL HOSPITAL | 4200 MONUMENT RD | Other | Hydraulic | | 4 |
| BELMONT BEHAVIORAL HOSPITAL | 4200 MONUMENT RD | Other | Hydraulic | | 4 |

**ThyssenKrupp Elevator Americas**



# Platinum Service Agreement

**Preventative Maintenance Program**

We will service your equipment described in this agreement on a regularly scheduled basis. These service visits will be performed during normal business working days and hours, which are defined as Monday through Friday, 8:00 AM to 4:30 PM (except scheduled holidays). All work performed before or after normal business working days and hours shall be considered "Overtime".

ThyssenKrupp Elevator will perform the following services:

- Examine your elevator equipment for optimum operation.  Our examination, lubrication and adjustment will cover the following components of your elevator system:
  o   Control and landing positioning systems
  o   Signal fixtures
  o   Machines, drives, motors, governors, sheaves, and wire ropes
  o   Power units, pumps, valves, and jacks
  o   Car and hoistway door operating devices and door protection equipment
  o   Loadweighters, car frames and platforms, and counterweights
  o   Safety mechanisms
- Lubricate equipment for smooth and efficient performance
- Adjust elevator parts and components to maximize performance and safe operation

**Full Coverage Parts Repair and Replacement**

ThyssenKrupp Elevator will provide full coverage parts repair and/or replacement for all components worn due to normal wear, unless specifically excluded in the "Items Not Covered" or "Other Conditions" provisions herein. We maintain a comprehensive parts inventory to support our field operations. All replacement parts used in your equipment will be new or refurbished to meet the quality standards of ThyssenKrupp Elevator. Most specialized parts are available within 24 hours, seven days a week. We will relamp all signals as required (during regularly scheduled visits).

**Maintenance Control Program**

ThyssenKrupp Elevator performs service in accordance with A17.1 – 2010 / CSA B44-10, Section 8.6 of the code requires the unit owner to have a Maintenance Control Program (MCP). ThyssenKrupp's MCP meets or exceeds all requirements outlined in Section 8.6. The Maintenance Control Program includes ThyssenKrupp Elevator's Maintenance Tasks & Records documentation which shall be used to record all maintenance, repairs, replacements and tests performed on the equipment and is provided with each unit as required by code. ThyssenKrupp Elevator also provides per Section 8.6 of the code, a maintenance tasks procedures manual with each unit; TKE calls this manual the BEEP Manual, or Basic Elevator, Escalator Procedures Manual. We do not perform any tests unless such tests are specifically listed as included elsewhere in this agreement.

**Quality Assurance**

To help increase elevator performance and decrease downtime, our technicians utilize the latest industry methods and technology available to us for your specific brand of elevator. They will be equipped with our tools, documentation and knowledge to troubleshoot your unique system, as well as access  to  a comprehensive parts replacement inventory system.

Behind our technicians is a team devoted to elevator excellence. Technicians are supported around the clock by a team of engineers and field support experts.  Our North American technical support facilities continuously research advancements in the industry and in your equipment. Also, our internal quality control program ensures optimum and reliable operation of your elevator equipment.

To assure that quality standards are being maintained, we may conduct periodic field quality audit surveys. Your

# Platinum Service Agreement

dedicated ThyssenKrupp Elevator representative will be available to discuss your elevator needs with you in all aspects of service and modernization. In addition, you may receive recommendations for upgrades that will also provide you with budget options designed to enhance the appearance, performance and safety of or meet Code requirements for your equipment over time.

## Service Requests During Normal Working Days and Hours
Service requests are defined as any request for dispatch of our technician to the location of the equipment covered in this agreement from one or more of the following: you or your representative, the building or building's representative, emergency personnel, and/or passengers through the elevator's communication device and/or from Vista Remote Monitoring through the elevator's communication line.  Service requests include minor adjustments and response to emergency entrapments that can be accomplished in two hours or less (excluding travel time) and do not include regularly scheduled maintenance visits.

We will respond to service requests during normal business working days and hours, as defined above, at no additional charge.

## Overtime Service Requests
On all overtime service requests, we will absorb straight time costs for labor, and you will be responsible for the difference between the straight time costs and overtime costs for labor. Labor costs include travel time, travel expenses, and time spent on the job. Overtime service requests are performed before or after normal business working days and hours.

## ☐ VIEW® (Check box if included)
VIEW is ThyssenKrupp Elevator's customer oriented, online service activity reporting system. VIEW allows building owners and managers to monitor maintenance and service call activity. VIEW can be accessed via the Internet any time, day or night. You can "VIEW" service tickets associated with a single elevator serviced under this agreement, for all the elevators at the locations services under this agreement, or across an entire portfolio of elevator equipment that is serviced by ThyssenKrupp Elevator. Special considerations regarding VIEW are included herein.

ThyssenKrupp Elevator agrees to provide a user name and password to Purchaser via ThyssenKrupp Elevator's Internet website, www.tke-view.com, for your access to maintenance and service call activity. Purchaser's Internet availability equipment (including hardware and software) and Internet connection shall be provided by others. You acknowledge that data reported prior to January 1, 2004 may not be all-inclusive of work actually performed. Additionally, you acknowledge that any work performed by repair, modernization, and/or construction personnel may not be included or accessible in VIEW until ThyssenKrupp Elevator's PDA system for time reporting is fully deployed to all field employees. Requests for additional information and maintenance and service call activity tickets which are not generated by electronic means shall be made to your local ThyssenKrupp Elevator branch office as shown on page 1 of this agreement. ThyssenKrupp Elevator reserves the right to restrict access to this information if Purchaser's account has an outstanding unpaid balance greater than 30 days and/or if you have provided written notification of your intent to cancel our agreement and/or in the event of anticipated, pending or instigated litigation by either party.

## ☐ VISTA®(Check box if included)
VISTA Remote Monitoring is ThyssenKrupp Elevator's exclusive service for monitoring the status and performance of you elevator(s). VISTA monitors compatible equipment 24 hours per day, 7 days per week,and 365 days per year. Constantly monitor performance data on your equipment provides ThyssenKrupp Elevator the ability to respond to operational irregularities quickly and more efficiently.  With VISTA, we can often dispatch a service technician to your location before any interruption in elevator service occurs.  Service visits based on VISTA data will be made during normal business hours on normal business days.

## ☐ ThyssenKrupp Communications® (Check box if included)

# Platinum Service Agreement

ThyssenKrupp Communications is ThyssenKrupp Elevator's 24-hour telephone monitoring and emergency call service. Our representatives are trained to handle elevator calls and they can assess the situation and quickly dispatch a technician when necessary. If needed, they can stay on the line to reassure a stranded passenger that help is on the way. ThyssenKrupp Communications maintains digital recordings and computerized records of the time, date, and location of calls received and action taken for the benefit of passengers and building owners. Special considerations regarding ThyssenKrupp Communications are set forth below.

☒ **Periodic Safety Testing (Check box if included)**
ThyssenKrupp Elevator will test your equipment in accordance with those periodic testing requirements as outlined in the American National Safety Code for Elevators and Escalators, ANSI A 17.1, which are in effect at the time this agreement is executed. In the event that the state, city or local governing authority in which the equipment is located has adopted different requirements, ThyssenKrupp Elevator will test your equipment in accordance with those periodic testing requirements in effect at the time this agreement is executed. You agree to pay for any costs of the inspector and/or inspection fees. Special Considerations regarding periodic safety testing are set forth below.

**Product Information**
You agree to provide ThyssenKrupp Elevator with current wiring diagrams that reflect all changes, parts catalogs, and maintenance instructions for the equipment covered by this agreement (exception: we will supply all of the above for new ThyssenKrupp elevators at no additional cost). You agree to authorize us to produce single copies of any programmable device(s) used in the equipment for the purpose of archival back-up of the software embodied therein. These items will remain your property.

**Safety**
You agree to instruct or warn passengers in the proper use of the equipment and to keep the equipment under continued surveillance by competent personnel to detect irregularities between elevator examinations. You agree to immediately report any condition that may indicate the need for correction before the next regular examination. You agree to immediately shut down the equipment upon manifestation of any irregularities in either the operation or the appearance of the equipment, to immediately notify us, and to keep the equipment shut down until the completion of any repairs. You agree to give us immediate verbal notice and written notice within ten (10) days after any occurrence or accident in or about the elevator. You agree to provide our personnel with a safe place to work. You agree to provide a suitable machine room, including secured doors, waterproofing, lighting, ventilation, and appropriate air temperature control to maintain that room at a temperature between 60°F and 90°F.   You also agree to maintain the elevator pit in a dry condition at all times. Should water or other liquids become present, you will contract with others for removal and the proper handling of such liquids. We reserve the right to discontinue work in the building whenever, in our sole opinion, our personnel do not have a safe place to work. You also agree that if ThyssenKrupp Elevator's inspection of a piece of equipment serviced under this agreement reveals an operational problem which, in ThyssenKrupp Elevator's sole judgment, jeopardizes the safety of the riding public, ThyssenKrupp Elevator may shut down the equipment until such time as the operational problem is resolved. In that event, ThyssenKrupp Elevator will immediately advise you in writing of such action, the reason for such action, and whether any proposed solution is covered by the terms of this agreement.

**Other**
You agree not to permit others to make alterations, additions, adjustments, or repairs or replace any component or part of the equipment during the term of this agreement. You agree to accept our judgment as to the means and methods employed by us for any corrective work under this agreement. Since ThyssenKrupp Elevator's top priority is the satisfaction of its customers, if you should have any concern(s) with the means and methods used to maintain or repair the equipment covered under this agreement, you agree to provide us with written notice of that concern and give us

# Platinum Service Agreement

thirty (30) days to respond either in writing or commence action to appropriately resolve it.

In the event of the sale, lease or other transfer of the ownership or management of the premises in which the elevator(s) or equipment described herein are located, you agree to see that such transferee is made aware of this agreement and agrees to assume and/or to be bound by the conditions hereof for the balance of the unexpired term of this agreement. Should the transferee fail to assume this agreement, you shall remain liable for all unpaid amounts, including those owed for the balance of the current unexpired term of this agreement.

In consideration of ThyssenKrupp Elevator performing the services herein specified, you expressly agree, to the fullest extent permitted by law, to indemnify, defend, save harmless, discharge, release and forever acquit ThyssenKrupp Elevator Corporation, our employees, officers, agents, affiliates, and subsidiaries from and against any and all claims, demands, suits, and proceedings brought against ThyssenKrupp Elevator, our employees, officers, agents, affiliates and subsidiaries for loss, property damage (including damage to the equipment which is the subject matter of this agreement), personal injury or death that are alleged to have been caused by the Purchaser or any others in connection with the presence, use, misuse, maintenance, installation, removal, manufacture, design, operation or condition of the equipment covered by this agreement, or the associated areas surrounding such equipment. Your duty to indemnify does not apply to the extent that the loss, property damage (including damage to the equipment which is the subject matter of this agreement), personal injury or death is determined to be caused by or resulting from the negligence of ThyssenKrupp Elevator and/or our employees. You recognize that your obligation to ThyssenKrupp Elevator under this clause includes payment of all attorney's fees, court costs, judgments, settlements, interest and any other expenses of litigation arising out of such claims or lawsuits.

## Insurance

You expressly agree to name ThyssenKrupp Elevator Corporation along with its officers, agents, affiliates and subsidiaries as additional insureds in your liability and any excess (umbrella) liability insurance policy(ies). Such insurance must insure ThyssenKrupp Elevator Corporation, along with its officers, agents, affiliates and subsidiaries for those claims and/or losses referenced in the above paragraph, and for claims and/or losses arising from the sole negligence or responsibility of ThyssenKrupp Elevator Corporation and/or its officers, agents, affiliates and subsidiaries. Such insurance must specify that its coverage is primary and non-contributory. You hereby waive the right of subrogation.

## Items Not Covered

We do not cover cosmetic, construction, or ancillary components of the elevator system, including the finishing, repairing, or replacement of the cab enclosure, ceiling frames, panels, and/or fixtures, hoistway door panels, door frames, swing door hinges and closing devices, sills, car flooring, floor covering, lighting fixtures, ceiling light bulbs and tubes, main line power switches, breaker(s), feeders to controller, below ground or unexposed  hydraulic elevator system, including but not limited to, jack cylinder, piston, PVC or other protective material;  below ground or unexposed piping, alignment of elevator guide rails, smoke and fire sensors, fire service reports, all communication and entertainment devices, security systems not installed by us, batteries for emergency lighting and emergency lowering, air conditioners, heaters, ventilation fans, pit pumps  and all other items as set forth and excluded in this agreement.

## Other Conditions

With the passage of time, equipment technology and designs will change.  If any part or component of your equipment covered under this agreement cannot, in our sole opinion, be safely repaired and is no longer stocked and readily available from either the original equipment manufacturer or an aftermarket source, that part or component shall be considered obsolete. You will be responsible for all charges associated with replacing that obsolete part or component as well as all charges required to ensure that the remainder of the equipment is functionally compatible with that replacement part or component. In addition, we will not be required to make any changes or recommendations in the existing design or function of the unit(s) nor will we be obligated to install new attachments or parts upon the equipment as recommended or directed by insurance companies, governmental agencies or authorities, or any other third party,

# Platinum Service Agreement

Moreover, we shall not be obligated to service, renew, replace and/or repair the equipment due to any one or more of the following: anyone's abuse, misuse and/or vandalism of the equipment; anyone's negligence in connection with the use or operation of the equipment;  any loss of power, power fluctuations, power failure, or power surges that in any way affect the operation of the equipment; fire, smoke, explosions, water, storms, wind, lightening, acts of civil or military authorities, strikes, lockouts, other labor disputes, theft, riot, civil commotion, war, malicious mischief, acts of God, or any other reason or cause beyond our control that affects the use or operation of the equipment.  You expressly agree to release and discharge us and our employees for any and all claims and/or losses (including personal injury, death and property damage, specifically including damage to the property which is the subject matter of this agreement) associated therewith or caused thereby.  ThyssenKrupp Elevator shall also automatically receive an extension of time commensurate with any delay in performance caused by or related to the aforementioned and you expressly agree to release and discharge ThyssenKrupp Elevator from any and all claims for consequential, special or indirect damages arising out of the performance of this agreement. In no event shall ThyssenKrupp Elevator's liability for damages arising out of this agreement exceed the remaining unpaid installments of the current, unexpired term of this agreement

Should your system require any of the safety tests on the commencement date of this agreement, ThyssenKrupp Elevator assumes no responsibility for the day-to-day operation of the governor or safeties on traction elevators, or the hydraulic system on hydraulic elevators under the terms of this agreement until the test has been completed and the equipment passed. Should the respective system fail any of those tests, it shall be your sole responsibility to make necessary repairs and place the equipment in a condition that we deem acceptable for further coverage under the terms of this agreement. We shall not be liable for any damage to the building structure or the elevator resulting from the performance of any safety tests we perform at any time under this agreement. If during the initial firefighter's service test, that feature is found to be inoperable, you shall be responsible for all costs associated with necessary repair(s) to bring the elevator(s) into compliance with the applicable elevator codes in your local jurisdiction.

In the event an Attorney is retained to enforce, construe or defend any of the terms and conditions of this agreement or to collect any monies due hereunder, either with or without litigation, the prevailing party shall be entitled to recover all costs and reasonable attorney's fees.

You hereby waive trial by jury. You agree that this agreement shall be construed and enforced in accordance with the laws of the state where the equipment is located, You consent to jurisdiction of the courts, both state and Federal, of the state in which the equipment is located as to all matters and disputes arising out of this agreement.

In the event any portion of this agreement is deemed invalid or unenforceable by a court of law, public policy or statute, such finding shall not affect the validity or enforceability of any other portion of this agreement.

Our rights under this agreement shall be cumulative and our failure to exercise any rights given hereunder shall not operate to forfeit or waive any of said rights and any extension, indulgence or change by us in the method, mode or manner of payment or any of its other rights shall not be construed as a waiver of any of its rights under this agreement,

**Price.**
The price for the services as stated in this agreement shall be ▬▬▬▬▬▬▬▬▬▬▬▬▬ per month, excluding taxes, payable Annually in advance.

**Term**
This agreement is effective for Thirty Six (36) month(s) starting 08/01/2015 and is non-cancelable. To ensure continuous service, this agreement will be automatically renewed for successive Thirty Six (36) month periods, unless either party timely serves written notice upon the other party of its intention to cancel renewal at least ninety (90) days but not more than 120 days before the end of the initial Thirty Six (36) month period, or at least ninety (90) days but not more than 120

# Platinum Service Agreement

days before the end of any subsequent Thirty Six (36) month renewal period. Notice shall be sent by certified mail, return receipt requested to the address set forth on page 1 of this agreement. Time is of the essence.

## Annual Price Adjustments

Since our costs to provide you with the service set forth in this agreement may increase, we reserve the right to adjust the price of our service under this agreement accordingly. In the event this occurs, we will adjust your monthly price based on the percentage change in the average rate paid to elevator examiners. This rate paid to elevator examiners consists of the hourly rate paid to examiners plus fringe benefits and union welfare granted in place of or in addition to the hourly rate. Fringe benefits include pensions, vacations, paid holidays, group insurance, sickness and accident insurance, and hospital insurance. We also reserve the right to make additional adjustment to the price of our service under this agreement and/or enact surcharges as needed to account for increased fuel prices when such increases exceed the Consumer Price Index (CPI) current rate. We also reserve the exclusive right to make additional adjustment to the price of our service under this agreement in the event that the equipment covered by this agreement is modified from its present state.

## Overdue Invoices

A service charge of 1½% per month, or the highest legal rate, whichever is more, shall apply to all overdue accounts you have with ThyssenKrupp Elevator that are in any way related to your equipment described in this agreement. If you do not pay any sum due to ThyssenKrupp Elevator related to your equipment described in this agreement, regardless of whether it is billed pursuant to this agreement or any other with us, within sixty (60) days from the billing date, we may also choose to do one or more of the following: 1) suspend all service until all amounts due have been paid in full, and/or 2) declare all sums for the unexpired term of this agreement due immediately as liquidated damages and terminate our obligations under this agreement. If ThyssenKrupp Elevator elects to suspend service, we shall not be responsible for personal injury, death, damage to property (including damage to the equipment that is the subject matter of this agreement) or losses of any other type or kind that is in any way related the ThyssenKrupp Elevator's suspension of service. Upon resumption of service, you will be responsible for payment to ThyssenKrupp Elevator for all costs we incur that result from our suspension of service and to remedy any damage caused to your equipment during that time. Time is of the essence.

## Alternate Payment Plan – Less Than Annual Frequency

This agreement includes a standard annual payment plan. If an alternate payment plan is selected below as indicated by your acceptance, additional cost will be added to the net billing amount in accordance with the percentages shown:

| Billing Frequency | Agreement Price Increase | Check for Selection | Purchaser's Initial Acceptance |
|---|---|---|---|
| Semi-Annual | 1% | | |
| Tri-Annual | 2% | | |
| Quarterly | 3% | | |
| Monthly | 4% | ✓ | ~n |

## Special Considerations

No Special Considerations,

# Platinum Service Agreement

**Acceptance**

Your acceptance of this agreement and its approval by an authorized manager of ThyssenKrupp Elevator will constitute exclusively and entirely the agreement for the services herein described. All other prior representations or agreements, whether written or verbal, will be deemed to be merged herein and no other changes in or additions to this agreement will be recognized unless made in writing and properly executed by both parties. Should your acceptance be in the form of a purchase order or other similar document, the provisions of this agreement will govern, even in the event of a conflict. This proposal is hereby accepted in its entirety and shall constitute the entire agreement as contemplated by you and us. This proposal is submitted for acceptance within one-hundred twenty (120) days from the Date Submitted by the ThyssenKrupp Elevator representative indicated below.

No agent or employee shall have the authority to waive or modify any of the terms of this agreement without the prior written approval of an authorized ThyssenKrupp Elevator manager.

| ThyssenKrupp Elevator Corporation: | BELMONT BEHAVIORAL HEALTH CENTER: | ThyssenKrupp Elevator Corporation Approval: |
|---|---|---|
| By: *Francescamelle* | By: *[signature]* | By: *[signature]* |
| (Signature of ThyssenKrupp Elevator Representative) | (Signature of Authorized Individual) | (Signature of Authorized Individual) |
| | | |
| Francesca Melle | Nick M(?k | Adam Luckey |
| Account Manager | (Print or Type Name) | Branch Manager |
| francesca.melle@thyssenKrupp.com | | |
| | CFO | |
| | (Print or Type Title) | |
| 7\|14\|2015 | 7/16/15 | 8/10/15 |
| (Date Submitted) | (Date of Approval) | (Date of Approval) |

AO 441 (Rev. 07/10)  Summons on Third-Party Complaint

# UNITED STATES DISTRICT COURT
### for the

### EASTERN DUSTRUCT OF Pennsylvania

| | |
|---|---|
| JASMINE SUMAIR | ) |
| *Plaintiff* | ) |
| v. | ) |
| THYSSENKRUPP ELEVATOR CORP. | ) |
| *Defendant, Third-party plaintiff* | ) |
| v. | ) |
| BELMONT BEHAVIORAL HOSPITAL, LLC | ) |
| *Third-party defendant* | ) |

Civil Action No. 2:21-cv-00145

## SUMMONS ON A THIRD-PARTY COMPLAINT

To: *(Third-party defendant's name and address)*

  Belmont Behavioral Hospital, LLC
  4200 Monument Road
  Phila., PA  19131

    A lawsuit has been filed against defendant ThyssenKrupp Elevator Corp, who as third-party plaintiff is making this claim against you to pay part or all of what the defendant may owe to the plaintiff Jasmine Sumair              .

    Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff and on the defendant an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the defendant or defendant's attorney, whose name and address are:  Nancy A. Nolan, Esquire, Shimberg & Friel, P.C., 20 Brace Road, Suite 350, Cherry Hill, NJ  08034

    It must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

  Seth D. Wilson, Esquire, Morris & Wilson, P.C.
  161 Washington Street, Suite 900, Conschohocken, PA  19428

    If you fail to respond, judgment by default will be entered against you for the relief demanded in the third-party complaint.  You also must file the answer or motion with the court and serve it on any other parties.

    A copy of the plaintiff's complaint is also attached.  You may – but are not required to – respond to it.

Date:   1/25/21

                                        *CLERK OF COURT*

                                        _____
                                        *Signature of Clerk or Deputy Clerk*

AO 441 (Rev. 07/10)  Summons on Third-Party Complaint (Page 2)

Civil Action No.

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒  I personally served the summons on the individual at *(place)*

_____ on *(date)* _____ ; or

❒  I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒  I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒  I returned the summons unexecuted because _____ ; or

❒  Other *(specify)*: _____

_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: